UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRANDIE D. STONE,            )
    Plaintiff,                )
                             )
vs.                          )   1:11-cv-225-RLY-DML
                             )
ST. VINCENT HOSPITAL AND HEALTH )
CARE CENTER,                 )
    Defendant.               )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Brandie Stone ("Plaintiff"), filed a two-count Complaint against her former employer, St. Vincent Hospital and Health Care Center (the "Hospital"), alleging that the Hospital violated the Family Medical Leave Act ("FMLA") and violated the Indiana common law doctrine of promissory estoppel. The Hospital now moves for summary judgment. For the reasons set forth below, the Hospital's Motion is **GRANTED**.

**I.  Factual Background**

Plaintiff worked as a PRN (per diem nurse) in the Hospital's Cardiovascular Peripheral Vascular ("CVPV") unit. (Deposition of Brandie Stone ("Plaintiff Dep.") at 7-9). The Hospital requires PRN nurses to work one shift per month, but Plaintiff generally worked full-time hours. (*Id*. at 9-10).

On February 13, 2009, Plaintiff's minor daughter was hospitalized. (*Id*. at 40).

That same day, Plaintiff informed Jane Lush ("Lush"), her supervisor, that her daughter was "emergently hospitalized" for "an undetermined amount of time" and that Plaintiff "needed to remove" herself from the schedule "for a few weeks." (*Id*. at 41-43). Plaintiff explained that her daughter had been given a behavioral assessment and deemed possibly suicidal, and that she had suffered from hallucinations, nightmares, and headaches. (*Id*. at 43-44). Lush told Plaintiff to keep her informed and to tell her when she would be able to return to work. (*Id*. at 43). Plaintiff believes that she called the Hospital around February 23, 2009 – the day her daughter was released from the hospital – and informed someone (she cannot remember who) that she would return to work on March 16, 2009. (*Id*. at 46-47, 80).

On February 25, 2009, Plaintiff's daughter returned to school, and, on March 16, 2009, Plaintiff returned to work. (*Id*. at 46, 48). Shortly thereafter, on March 18, 2009, Plaintiff informed Lush that her daughter's condition had deteriorated, and that "she was required to take leave to go home and take care of her." (*Id*. at 54). Lush responded, "you need to go home, take care of your daughter, your family comes first," do not "worry about your job," and do not "worry about contacting the hospital." (*Id*. at 54-55). Following this March 18, 2009, conversation, Plaintiff did not have any further communication with the Hospital until Lush notified her in writing on May 28, 2009, that her employment was terminated, effective May 17, 2009, for her failure to meet her commitment of working one shift per schedule. (*Id*., Ex. 8).

Plaintiff's decision to take leave from the Hospital was not mandated by her

2

daughter's physicians; Plaintiff made the decision because she thought it was in her daughter's best interest. (*Id*. at 53). Plaintiff testified that, although her daughter was back in school, Plaintiff was frequently called to the school to tend to her. (*Id*. at 51-52). Plaintiff also picked her daughter up from school each day because she "began having what appeared to be panic attacks on the bus." (*Id*. at 49). There is no evidence in the record that Plaintiff informed the Hospital of these facts.

The Hospital requires requests for FMLA leave be in writing. (Affidavit of Cheryl Schaefer ("Schaefer Aff.") ¶ 4). This policy was stated in the Hospital's Associate Handbook, which was accessible by associates, like Plaintiff, through the Hospital's intranet. (*Id*. ¶¶ 4-5 and Exs. A, B; Plaintiff Dep. at 98). Plaintiff neither submitted her request for FMLA leave in writing, nor informed the Hospital of the probable duration of her leave. (Plaintiff Dep. at 56, 58-59; Schaefer Aff. ¶ 6). Plaintiff testified that she was "waiting on the hospital to contact [her]." (Plaintiff Dep. at 59).

This lawsuit followed.

## II. Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, in resolving a motion for summary judgment, the court views

3

"the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Id.* (citing *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999)). With these principles in mind, the court now addresses the propriety of the Hospital's motion for summary judgment.

### III. Discussion

#### A. FMLA

Under the FMLA, an eligible employee may take up to 12 weeks of leave in a one-year period to care for a family member with a serious health condition. 29 U.S.C. § 2612(a)(1). In an effort to protect an employee who exercises his or her right to leave, the FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, a plaintiff must establish that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan Cnty., Wisc.*, 604 F.3d 987, 993 (7th Cir. 2010) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)). The parties main dispute is whether Plaintiff gave sufficient notice of her intent to take FMLA leave. The regulations applicable to this case read:

> When the need for leave is not foreseeable, an employee must comply with

4

> the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. . . . If any employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R § 825.303(c). It is undisputed that Plaintiff failed to comply with the Hospital's usual and customary notice and procedural requirements by failing to submit her leave request in writing, and failed to advise the Hospital of the probable duration of her leave. *See* 29 C.F.R. § 825.303(b) (noting that the content of an employee's notice must include the "anticipated duration of the absence, if known"). Moreover, Plaintiff presents no evidence of unusual circumstances justifying her failure to comply with the Hospital's policy. Although Plaintiff testified that she was often called to the school to address concerns with her daughter's well-being, there is no evidence in the record supporting the inference that she had absolutely no time, in a twenty-four hour day, to contact the Hospital or to fill out the FMLA paperwork which she admits was available on the Hospital's intranet.

This case is analogous to *Gilliam, supra.* In that case, the plaintiff asked for a Friday off to see his fiancé and newborn baby, who were located in a different city. 233 F.3d at 970. His supervisor expected he would be back to work the following Monday; the plaintiff thought his leave was for an indefinite duration. *Id*. The plaintiff contacted his supervisor the following Thursday to learn that his employment had been terminated for violating the collective bargaining agreement's requirement that employees notify UPS by the beginning of their third scheduled shift of their anticipated return to work. *Id*.

at 970-71. The Seventh Circuit held that, to the extent the FMLA applied, UPS did not violate the FMLA by terminating the plaintiff for his failure to comply with the collective bargaining agreement; i.e., UPS' usual and customary notice and procedural requirement for requesting leave. *Id*. at 971.

Similarly here, following Plaintiff's brief conversation with Lush requesting time off to care for her daughter, Plaintiff never attempted to contact the Hospital to inform Lush or anyone in Human Resources of when she expected to return to work, nor did she ever fill out the appropriate paperwork. The FMLA "does [not] authorize employees on leave to keep their employers in the dark about when they will return from leave." *Gilliam*, 233 F.3d 969, 971 (7th Cir. 2000). The Hospital's termination of Plaintiff's employment for her failure to work one shift per schedule was lawful, and did not, as a matter of law, interfere with the exercise of Plaintiff's FMLA rights.

**B.     Promissory Estoppel**

Having dismissed Plaintiff's only federal claim, the court elects to take supplemental jurisdiction over her related state law claim for promissory estoppel. 28 U.S.C. § 1367(a).

A claim for promissory estoppel consists of five elements: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *See Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). A promise subject to estoppel must be unambiguous and

of a definite nature. *Sembos v. Philips Components*, 376 F.3d 696, 704 (7th Cir. 2004).

In *Sembos, supra.*, the plaintiff's employer, Philips Components ("Philips"), informed him that the company was being sold to a third party, Beyerschlag Centralab Components ("BCC"). *Id.* at 699. Although many jobs were lost as a result of the sale, the plaintiff was offered a position at BCC. *Id.* The plaintiff told Philips he would accept the position at BCC only if his pension benefits with BCC would be the same as they were under Philips' pension plan. *Id.* The plaintiff claimed that Philips promised him equivalent pension benefits, or alternatively that, if BCC's pension plan did not provide him the same benefits, he could remain employed at Philips. *Id.*

After learning that BCC's pension benefits were not as lucrative as Philips, the plaintiff rejected the offer to work for BCC and decided to continue to work for Philips. *Id.* Shortly thereafter, the plaintiff was notified by email of an agreement between Philips and BCC that allowed the plaintiff to work for BCC as a loaned employee for six months. *Id.* In an email, Philips notified plaintiff of this arrangement, and informed him that if Philips was unable to find suitable employment for him within six months or if he was unable to find suitable employment on his own within that time period, his employment would be terminated. *Id.*

After Philips terminated the plaintiff's employment, he filed suit, alleging in relevant part a claim for promissory estoppel. *Id.* at 704. The Seventh Circuit,

interpreting Illinois law,[1] affirmed the entry of summary judgment for Philips. The Court held that the alleged promises made by Philips were "too indefinite, as a matter of law, to constitute unambiguous promises supporting liability on the theory of promissory estoppel" because Philips "did not promise [the plaintiff] any specific position, salary, or other terms of employment." *Id.* The Court further held that the plaintiff failed to present any evidence of detrimental reliance on any alleged promises by Philips. *Id.* at 705. The plaintiff did not claim that he would have accepted a position at BCC but for Philips' promise of continued employment. *Id.* Instead, the plaintiff testified that if BCC's pension plan was not equivalent to the one offered by Philips, he would not accept a position at BCC. *Id.*

In the present case, Plaintiff argues that she relied on Lush's "promises" telling her that her family came first and not to worry about her job or about contacting the Hospital. Plaintiff's claim falters on two grounds. First, Lush's alleged promises were of an indefinite and ambiguous nature. To the extent Lush told the Plaintiff that she "could take leave" and not to "worry about her job" or contacting the Hospital, Plaintiff fails to

---

[1] *Semba* applied Illinois law. Because the elements of promissory estoppel under Illinois law are virtually identical to those under Indiana law, *compare Vajda v. Arthur Anderson & Co.*, 624 N.E.2d 1343, 1350 (Ill. App. Ct.), *app. denied*, 624 N.E.2d 818 (Ill. 1993) (existence of an unambiguous promise; reliance on that promise; reliance must be reasonable and foreseeable; and promisee actually relies on promise), *with Brown*, 758 N.E.2d at 52 (see above), the court finds that were this issue presented in an Indiana state court, Indiana would follow the reasoning advanced in *Semba*. *See Thomas v. H&R Block E. Enter., Inc.,* 630 F.3d 659, 663 (7th Cir. 2011) ("When addressing a question of state law while sitting in diversity, our task is to ascertain the substantive content of state law as it either had been determined by the highest court of the state or as it would be by the court if the present case were before it now.") (internal quotation marks and citation omitted).

present any evidence that Lush granted a request for a specific type of leave (leave of absence or FMLA) for a definite period of time. Second, Plaintiff testified that she would have taken leave regardless of Lush's alleged representations because she "knew she was entitled to something." (Plaintiff Dep. at 55, 62-63). Thus, she did not take action – i.e., leave – in reliance on any alleged "promise." For these reasons, the evidence does not support a promissory estoppel claim.

## IV. Conclusion

The record presents no genuine issue of material fact on Plaintiff's FMLA claim or promissory estoppel claim. The Hospital's Motion for Summary Judgment (Docket # 55) is therefore **GRANTED**.


**SO ORDERED** this 19th day of November 2012.

                               RICHARD L. YOUNG, CHIEF JUDGE
                               United States District Court
                               Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.